We will call the next matter, which is that of Ian Ray, the Honorable Leon AKendall. Mr. Cooper. Good morning. My name is Howard Cooper. I represent retired Judge Leon AKendall. I'd like to reserve two minutes for rebuttal, if I may, Your Honor. Great. May it please the Court. The matter before you this morning involves an unprecedented wielding of the criminal contempt power by the Virgin Islands Supreme Court against core speech set forth in an essential judicial function. Indeed, there can be no more important judicial function than the rendering of an opinion and the statements in that opinion explaining the decision made. Is that what is the unprecedented nature of this case, to wit, that the sanction, if you will, criminal contempt, has never been wielded against a judge for something set forth in an opinion? It is, Your Honor, yes. Because the mere use of criminal contempt against a judge struck me as at least highly unusual when I read the brief. And I then had a law clerk go off and discover that, actually, in the state courts, there is something of a history of contempt being wielded against judges for, among other things, defying directives from a superior court. So that what really sets this aside from any other case we can see is that here it is a written opinion of a court expressing its views, as you would say, in violation of proof of speech rights. Yes, Your Honor. Indeed, we've conducted the same canvassing of the nation on multiple occasions at this point, including through the present, and I can find, we can find, and I believe the people agree, no criminal contempt proceeding brought against a judge based upon pure speech, i.e., a judicial decision. The cases that are out there, mostly at the state court level, obviously, involve behavior, and they do involve direct defiance of a court order. For example, there is one of the cases from Texas, I believe, in which a judge, having been told to stay away from a particular grand jury because he was hot to trot after a particular prosecutor, ignored the directive of his superior court and was found to be in contempt. Your Honors, there are a number of proceedings from which the contempt proceeding arose, and it's well briefed and set forth, but I think that there are a handful of very important points that put in context this case and this appeal, and some of it gets lost in the briefing, so forgive me for just mentioning these things briefly before I get to the why as a matter of law criminal contempt can't apply in this case to the opinion that Judge Kendall wrote. First, it's important to note that this whole episode began in a deeply troubling case, the People v. Ford in Paris. Well, it was troubling at least to Judge Kendall, as I'm sure it's always troubling to a defendant. Well, I'm sorry, Your Honor. No, go ahead. Yes, it was troubling to Judge Kendall, but it was troubling with good cause. Perhaps the court may be aware that it began to go downhill when there was an oral plea offer made. The defendant said to involuntary manslaughter, and the prosecutor insisted it was voluntary manslaughter. And unfortunately for the prosecutor, there was a tape that seemed to suggest the offer was something other than what he continued to maintain the offer was. Correct, Your Honor. Somebody smart enough to keep phone voicemail messages. We live in a technological world, and we all have to be much more careful about what we say because it's there for time immemorial, and it was there. It didn't just suggest it. It said it. But more importantly, I would imagine that any judge, any judge, would be concerned when they saw the September 5, 2008 Bethel Memorandum, as we call it. This was a case where these were cases involving the killing of an off-duty Virgin Islands police officer, Errol Fratt, by two young men. And in a memo that ultimately found its way to Judge Kendall, the prosecutor, Jesse Bethel, who had upgraded the charges for manslaughter to first and second degree murder charges, admitted in an internal memo that there were serious doubts about the viability of those charges. Mr. Cooper, I can assure you that my colleagues and I have carefully read the briefs and we've read the record and we know the history here, at least of this case, and the confrontation between Judge Kendall and the prosecutor and so forth. What is the import of that for purposes of the statements ultimately made within the four corners of the opinion that is at issue here? The import of that really applies to the allegation in count two of the order to show cause that Judge Kendall pretextually recused himself. And the direct import is it would be very difficult for a judge, having seen that memo, to preside over a trial where those charges were being presented. That too is the failure to comply. Correct, Your Honor. Let's assume for a minute we agree with you that it was perfectly within his discretion to recuse himself. Then why all the ink spilled? I mean, you know, you had a recusal order, it's usually one page. Pretty gratuitous, wasn't it? Well, Judge Hodge, formerly the Chief Judge of the Superior Court, actually had issued a memo in which he said that judges, upon recusing themselves, should set forth in an opinion in detail their reasons. All right, and that could have been done without throwing mud at the high court. Well, Judge Kendall certainly could have chosen different words, but whether the words are 20 pages or three pages, or whether the words contain disrespectful remarks or not, they are, whether long or short, part of a judicial opinion. And when it comes to the speech issues in this case, the words issues that were set forth in the opinion, those cannot be the subject matter of a criminal contempt proceeding. Well, let me ask you also to assume that the nature of what was said in the opinion warranted some sanction, but not criminal sanction. What should they have done to discipline Judge Kendall? What could have been done? This is a strange case because my sense is that they were in search of a remedy and couldn't find one, and perhaps they pulled out a howitzer, which was not permitted under the law. Your Honor, it goes beyond having a sense. The Virgin Island Supreme Court in footnote one of its October 12, 2011 opinion astonishingly said this as they did its sentencing, much to my astonishment. The fact of the matter is that it would have been perfectly legitimate for the Virgin Island Supreme Court in the exercise of its authority to institute disciplinary proceedings. The problem was is that the Virgin Island Supreme Court their inherent bench power to call him forward in the courtroom and impose at least verbal sanctions publicly. Your Honor, I've seen the Virgin Island Supreme Court do that as I was awaiting to try this case. Might they have otherwise and additionally mandamus to him? There was mandamus in this case anyway, but might that have been a course available to them? Correct, Your Honor. They might have taken him off the wheel for a period of time, taken his pencils away from him, so to speak. They could. Your Honor, I recognize we're dealing or at the time we were dealing with a relatively new and inexperienced court, but what they did here was they pulled out a nuclear bomb in a way that they felt they had to because they themselves had not acted for almost a year and a half to create a disciplinary proceeding that would be available to discipline judges after this court's decision in the Kendall v. Russell case. Okay, a lot of weaponry here. Judge Hardiman would have it a howitzer. You would have it be a nuclear weapon. In Judge Kendall's case, I would say he pulled out a shotgun, and probably unnecessarily so. So is there a limiting principle here that we can apply in a First Amendment context like this? Can he say anything in a written opinion? Let me ask you another question. I realize that judges are subject to criminal prosecution for fraud, for corrupt acts. But the concept of absolute judicial immunity for a strictly judicial act, shouldn't that apply to criminal sanctions as well as civil suit? I believe that it should in this instance, Your Honor, for acts taken in the course of one's judicial duties. Without fraud or corruption or any? By definition, I think, Your Honor, if you were talking about corruption or fraud, you're talking about acts that are not undertaken in the context of judicial duties. And like every other citizen of the United States, the judge should be prosecuted or held to be prosecuted for such accusations and such crimes. The difference in this case is that this happened in the context of an opinion. And the danger in this case, and I use the word nuclear bomb carefully, because I think that really is the threat that exists here to the independence of the judiciary. The notion that a judge could be criminally prosecuted, as opposed to disciplined for something that that judge wrote in a decision, no matter how inartful or inflammatory the words are, is inconsistent. All right, no matter which, you didn't have an opportunity to answer my question, which was, is there any limiting principle here, if we're talking about the First Amendment, over what a judge may say in a written opinion? Well, I would argue that it should be subject to judicial immunity. Assuming for the sake of argument that there should be a limiting principle, it should be that the judge's actions somehow or the words present a clear and convincing danger. I'm sorry, clear and present danger under the Penicamp and Bridges v. California. So you're conceding there could be some criminal sanction of a judge for what a judge writes in an opinion? Well, if a judge, for example, were to make a threat against someone to kill them. In an opinion? In an opinion. Okay. Well, I would argue that that threat, in the first instance, because it's in an opinion, should be subject to judicial immunity, as the ACLU argues in their amicus brief. Even matters in bad faith that are conducted within the realm of judicial functions should be subject to judicial immunity. But if there were to be some bizarre set of circumstances where a judge is announcing an intent to harm somebody, that conceivably would provide a clear and present danger, which would enable the judge to be prosecuted for contempt, it's hard to imagine that it would proceed that way, as opposed to the judge being charged with something else. And your position here is that it's the clear and present danger test that applies, not the substantial likelihood of material prejudice? Well, Justice Kennedy has remarked that there really is no difference between those two standards. But the problem that we have here is what the Virgin Islands Supreme Court interpreted the lower standard to be. They essentially took judicial discipline cases in which lawyers were disciplined if their actions rose to the level of creating a substantial likelihood to impact improperly the fair administration of justice. Whatever standard is used here, there's absolutely no evidence, and was no evidence, before the court that anything Judge Kendall did had any impact on the administration of justice. Indeed, as the ACLU amicus brief puts it, I think, quite eloquently, the issuance of a judicial opinion is the administration of justice. Let me turn you to another issue, and that is applicable to count two, which was the failure to comply with the mandamus writ. Is there any authority that would allow a court to hold a judge in criminal contempt for pretextually recusing himself? I'm not even sure I know what pretextual recusal is. Your Honor, I have been scratching my head since I read the order to show cause back in 2009. I have yet to understand what that means. I mean, I'd be interested to hear from the other side where there is any actual violation, any violation by recusal under the explicit terms of this order. Well, think about it, Your Honor. The order is six sentences long. Each sentence begins with the word ordered. There is nothing in this order that ordered Judge Kendall, number one, to take the case to trial personally, and number two, to refrain from searching his own conscience to see whether he could do so and sit in a fair and impartial manner. And if the order had said that, namely, that Judge Kendall should ignore the judicial canons of ethics and his own obligation to uphold his oath of office. That's rather a loaded statement, isn't it? Well, I mean, but that's the logical conclusion of when you talk about a pretext, that Judge Kendall somehow pretextually considered his ethical obligations to see whether he could be fair in the Ford and Paris cases after all of this had happened and after he had seen the September 5, 2008 Bethel memo. Was the same prosecutor on the case at that point in time? Yes, Your Honor. Jesse Bethel, Assistant Attorney General. Thank you very much. We'll have you back on rebuttal, Mr. Cooper. Mr. Hall? Good morning. Good morning. Mr. Hall, I assume that you would agree that this is a highly unusual set of circumstances that bring us here. Yes, I certainly would agree. I think both sides have looked for cases that might be analogous and neither, I believe, has found a case that presents precisely the kind of inflammatory language that is at issue in this opinion. You haven't read any of Justice Scalia's dissents lately. Well, but I have, Your Honor. And none of them accuse his colleagues of illegal conduct. And more importantly, his comments are with respect to the conduct of his peers. Judge Kendall was a subordinate trial judge who expressed towards the Supreme Court of the United States, the Virgin Isles Supreme Court, rather, that its mandamus decision was entitled to no credence. All right, so what identifiable harm did this inflammatory opinion, and I will go so far as to say it was heated, it was perhaps overheated, but what identifiable harm was caused by that opinion to the Ford case? Well, it certainly caused a delay in the forward movement of the case. Did it? One week? It did. What more than one week? It caused, at least a week, the Supreme Court... And so, I mean, is one week so terrible? Well, it was more than just the one week. The issue before the Supreme Court was, how do we evaluate this case on a spectrum where, I think, there's no disagreement between the opponent and appellee as to the one end where there's reasonable disagreement. And I would suggest that in the case of Justice Scalia, his comments may be heated, but they're accompanied by reasonable disagreement with the rulings of... I mean, don't we have to separate out passionate language by any judges? I mean, all of us feel from time to time passionate about cases, and sometimes we write with passion, perhaps sometimes too much passion, but goodness, how can that move things into a criminal proceeding? Well, this is a criminal proceeding only because the appellant recused himself, thereby preventing this being a matter of civil contempt. Well, from my reading of the record, I don't know how he doesn't recuse himself in this case. Are you suggesting he should have stayed on this case and presided over this case? What I'm suggesting is that the language that he exhibited in his opinion and the intent that he indicated in his opinion was not to comply with the writ of mandamus, and that he recused himself not because he had the concerns that he expressed, but because he did not want to comply. Pretextual recusal is what you're suggesting, but how is there... Let me get to a different point than Judge Hardiman's question, with which I have considerable sympathy, but before you even get to that, how did Judge Kendall violate the explicit terms of the order by recusing at all, pretextually or otherwise? Well, let's look at the facts. He was the... No, no, let's look at the order. Well, that's essentially where I'm going to. It was an order that was issued where he was the nominal respondent judge. It was a mandamus order. It was not an ordinary order. It was an extraordinary writ. It told him that he had violated clear precedent of the Third Circuit and the Supreme Court of the United States, and he was pursuant to that mandamus writ to take action in accordance with the mandamus writ and the opinion... Okay, so in the interim, if the defendant had married the judge's granddaughter, could the judge recuse himself? Well, I would suggest that where he is subject to such an extraordinary writ... Could the judge... He could not... If the defendant became a member of his immediate family, of course the judge would have to recuse himself. And I'm suggesting that where he is... Wouldn't he have to recuse himself? I believe that that would be a circumstance where recusal would be proper. All right. But where he is... If we consider the Bethel Memorandum, for example, as a judge, a document that so prejudices me against the attorney who wrote it, I think I should have to recuse myself. And when we consider in this case the grounds for recusal, in our experience as judges, should we completely ignore our conclusions as to the need for recusal in a situation where you are so upset by a memorandum you receive from a lawyer? He had the memorandum opinion that he asserted he was upset with from early March of 2009 when he was served with a petition for writ of mandamus. He had it on June 4th of 2009. Mr. Hall, Mr. Hall, I spent 18 years as a trial judge in two different courts, a state and a U.S. district court. And I have never seen a dust-up between a prosecutor and a judge that was as unhealthy, if you will, as this one was. And I will speak personally and say I cannot imagine if I had been in Judge Kendall's position staying on that case for that reason alone. Because given the history that existed here, the trial promised to be a very contentious and uncomfortable experience for all, including any jurors who might be present. For that reason alone, it seems to me, that recusal was called for here, regardless of any philosophical differences that the judge may or may not have had. Accepting your statement, he should have recused himself before the writ of mandamus was issued. He should have recused himself before he presided at a trial involving the four. And let me say, as a judge, it is my determination, I don't speak for my colleagues, that the Bethel memo, if I as a trial judge, which I was, had received a memorandum like that from a prosecutor, at the point where I actually was going to hold a trial involving that prosecutor, I would have recused myself. And you have not said anything here which begins to persuade me that I should not have recused myself. And let me make it unanimous. Maybe we should forget the recusal issue. May I respond? If you wish. Okay. Go ahead and respond and then I'll ask you something else about a different part of the case. Because I think you're already in trouble on the recusal. But go ahead. And I accept that. But I think the timing is important. And what the Supreme Court looked at was the fact that on June 4th, he took a plea, or attempted to take a plea, and would have sentenced the defendants and her allocution from Bethel without any complaint whatsoever. He would have sentenced the defendant if he felt that the proffer of the prosecution as to what was going to be proved and the acknowledgement by the defendant that that was what would be proved matched up. And he found that that did not, and therefore the case was going to have to go to trial. And at that point, it is appropriate for him to recuse himself. Mr. Hall, Judge Hardiman threw you something of a lifeline here, maybe. And I'd take it if I were you. But I'm not you. I understand that. My question is let's assume that the language in the opinion written by Judge Kendall was gratuitous, inappropriate, sanctionable. So I'm throwing you more of a lifeline. I'm throwing you an assist here. But that begs the question of what the appropriate sanction ought to be. Can you tell us why the criminal sanction was opposed instead of all of the many things that Judge Smith had mentioned earlier, which would have been de rigueur for us and probably unremarkable. Why didn't any of those sanctions ensue instead of this very strange criminal sanction? Well, I think the Supreme Court indicated in their opinion that they felt that this was the only recourse open to them, as Attorney Cooper has indicated. But if it wasn't, that's not much of a reason, is it, if it was not the only recourse available? But it certainly was an option open to them. And it's certainly appropriate for them to consider it. I understand you're arguing the criminal sanction was an option. I'm trying to get to the bottom of whether it was the only option. Did they do this because they had no other way to sanction this judge or were there other sanctions short of criminal available? There was certainly no disciplinary proceeding that was in place to proceed under. Do you disagree that the mere power of the bench, their inherent authority, precluded them from summoning him before the court and imposing some kind of in-court sanction at the very least, separate and apart from a disciplinary apparatus that might have afforded a different form of process? Well, the opinion, I think, speaks to the issue. They issued a show-cause order. They indicated, I think, in their opinion, that they expected that there would be some explanation offered, but there wasn't. Instead, there was a plea of not guilty, which he had a right to. The thing is that the fact that it was criminal content meant that the burden of proof of the people was only higher. So it's your position, then, that absolute judicial immunity does not cover a criminal proceeding even when the judge is acting in judicial capacity without fraud or corruption in the jurisdiction of the court that he is in? Well, judicial immunity wasn't raised below. The First Amendment was. Judicial immunity was mentioned, I believe. It wasn't the focus of the argument. That's correct, but I don't recall that being mentioned. Well, what is your position on absolute judicial immunity in this situation where it is a judicial function within the jurisdiction of the judge without fraud or corruption? I think that is precisely the issue that faced the Supreme Court. Is this a matter where there has been perhaps a heated disagreement with the ruling, or is this a matter where there was a willful violation of an order? And given that there was recusal and an inability to remedy the situation by the appellant, they proceeded under criminal contempt. I want to return and focus specifically on the count one obstruction charge, Mr. Hall, and I believe one aspect of that was that Judge Kendall's opinion and the language therein undermined the integrity of the Supreme Court. Am I correct? I think that is a paraphrase of the language. I repeat that I believe that the language he used was overheated and, to say the least, gratuitous, but how did it undermine the integrity of the Supreme Court? And how do you make that point with Pennekamp, the Supreme Court case of Pennekamp v. Florida, which I don't think you cite, but which is cited in the blue brief, which makes clear that, in that case, press criticism of past judicial decisions could not directly affect the fair administration of justice? Well, that case, and I believe there's one other, the press case, applied the clear and present danger standard, and the Supreme Court instead believed that because we were looking at the conduct of a judge who should be held to a higher standard applied the substantial likelihood of material prejudice. So you don't think that even under that lower standard of substantial likelihood that there's some identifiable harm in the sense of undermining the integrity of the judiciary that's been met here? I think the Supreme Court, in applying that standard, concluded that the people were not required to show an actual obstruction, only a substantial likelihood of material prejudice, and didn't actually have to prove that prejudice occurred. And that is the test of Gentile v. Nevada. But it did go on to say that it believed, and explained in detail in a footnote, that they believed that there had been actual delay in the forward movement of the case. There was, I believe, a petition for a writ of mandamus filed by one of the defendants which impeded the forward movement of the case while that was being reviewed. It is the case that criminal contempt can be applied to lay people and it can be applied to attorneys in the appropriate circumstances. And in certain circumstances, I think even the appellant concedes that it may perhaps be applied to an opinion of the court. And in this case, the least of it is not pure speech. It is speech coupled with an order directing the librarian to publish the opinion worldwide and an order to the clerk to reassign the case to another judge. And so there's a combination of speech and context. Does that really add anything to the opinion being in existence, extant, otherwise available? Well, it adds the fact that it is not just simply speech. It's conduct which corroborates the intent to... But isn't it conduct, if this opinion by Judge Kendall is published worldwide, doesn't it say more about Judge Kendall than it does about the Virgin Islands Supreme Court? That he has written such an inflammatory opinion. I mean, that is not going to help a judge's reputation to have that sort of opinion published worldwide. And it seemed to me that perhaps the best disciplinary measure that can be taken about Judge Kendall with an opinion like that is to make sure it is published worldwide. Well, it does not speak well of the Supreme Court. Well, it doesn't. It certainly speaks even worse of Judge Kendall, I think. That may be so, but it certainly speaks poorly of both. Well, if you believe what he says, it doesn't necessarily mean that what he says about the Supreme Court is true, right? No. In fact, that is precisely why the Supreme Court answered their show-cause hearing order. Because the statements in the opinion accuse them of illegal acts. It really goes to the integrity of the Supreme Court. It accuses them of fraud. It accuses them of entering decisions that facilitate prosecutorial misconduct. I mean, those are very serious accusations. Thank you very much, Mr. Hall. Mr. Cooper, you have rebuttal. Let me start out by asking the obvious, Mr. Cooper, which I'm probably wasting everybody's time in doing. Assuming that we were to rule in your favor on the merits here, we need not reach the disqualification issue. You need not. Let me just pick up very briefly on the last topic that Brother Counsel Mr. Hall was arguing, namely, as he put it earlier in this case, that what this is all about is Judge Kendall gave the Virgin Islands Supreme Court a public raspberry. Whether that's true or not, cases are legion, as is commentary across the country, that the criminal contempt power is not to be wielded to protect the dignity of the court, and that, in fact, wielding the criminal contempt power for that reason would undermine the dignity of the court. Do you concede, as Mr. Hall argues, that the opinion accused the Virgin Islands Supreme Court of criminal behavior? No. Why not? Because that's not what it said. It was registered. It said that they got it wrong. He said it accused them of committing fraud. You will find that language nowhere in the decision, and nor can it be inferred, not to go back to the last case. I tried them both, and they were both going on at the same time, frankly. And while the court need not reach the recusal issue, there is a disturbing element here that this was very personal to the justices in terms of what was going on. When they wrote their October 11, 2012 decision, having earlier denied a motion to disqualify and recuse filed by Judge Kendall on the grounds that no single justice or the justices felt personally under attack, they reversed course, and they are the ones who said, not the opinion, that Judge Kendall had blatantly accused them of misconduct and attacks upon them in their capacity as justices. So we end up in a very, very bizarre set of circumstances where the criminal contempt statute is used to prosecute. There is then a finding by a special master recommending acquittal on all counts. Which is rejected. The handpicked special master of the Supreme Court is rejected. Which is rejected, and then in the strangest procedural posture I've ever been in, the people are ordered to appeal a recommendation of not guilty. I'm trying to hash through what the burden of proof was on that. It was quite challenging. And then we... I don't think we have to go there. I don't think that you... Thank you very much. Your time is up, Mr. Cooper. Years ago in the Western District of Pennsylvania, I had a colleague, in fact I think he might have been for a short while a colleague of Judge Hardeman's, who tried a case when he was practicing law, and tried it in front of one of the now deceased members of the Western District. It was a civil negligence case, and our former colleague, Representative Plaintiff, went in, tried his case, caught a motion for non-suit, and the judge granted it. And both sides agreed, granted it erroneously. It went up, was reversed, came back down, the case was set for retrial, and the now deceased judge heard that matter. Our former colleague put in his case. Another motion for non-suit was interposed, with this time the trial judge saying, I grant the motion to dismiss in hopes that this time the Court of Appeals will read the record. They settled the case, so it never got up to the Third Circuit. We never had an opportunity to deal with it, but I suspect I know how we would have addressed it if it had. We'll take a recess.